UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIRK SCULLY, a/k/a KIRK E. SCULLY, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 15 C 9665<br>) |
| v. | ) Magistrate Judge Sidney Schenkier<br>) |
| CITIZENS BANK N.A. f/k/a RBS CITIZENS N.A. successor by merger to CHARTER ONE BANK, N.A. f/k/a Charter One Bank, F.S.B. successor by merger to ST. PAUL FEDERAL BANK FOR SAVINGS, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER[1]

Defendant Citizens Bank, N.A. ("Citizens") has moved to dismiss plaintiff Kirk Scully's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the ground that this Court lacks subject matter jurisdiction over plaintiff's claims under the *Rooker-Feldman* doctrine (doc. # 17: Def.'s Mot to Dismiss at 2). Alternatively, defendant argues that plaintiff's complaint is barred by *res judicata* (*Id.*). The motion has now been fully briefed. For the reasons that follow, we grant defendant's motion to dismiss for lack of subject matter jurisdiction.

I.

In ruling on either a Rule 12(b)(1) or 12(b)(6) motion to dismiss, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12(b)(1)); *White v. Keely*, 814 F.3d. 883, 887-88 (7th Cir. 2016) (Rule 12(b)(6)). The Court may supplement the plaintiff's

---

[1] On December 16, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 11).

allegations with information from documents in the public record, which we may judicially notice without converting the motion to dismiss into a motion for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012). Moreover, in evaluating a factual challenge to subject matter jurisdiction -- *i.e.*, where the defendant contends that "there is in fact no subject matter jurisdiction" (as opposed to a facial challenge alleging that the plaintiff did not sufficiently allege a basis for subject matter jurisdiction) -- "the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha*, 807 F.3d at 173.

Here, defendant alleges that there is in fact no subject matter jurisdiction. Accordingly, we review both the well-pleaded factual allegations in Mr. Scully's complaint as well as the exhibits attached to the parties' filings on this motion, which include documents in the public record and an affidavit from Terry Jaeger, a friend and financial advisor to Mr. Scully.

## II.

The relevant facts are as follows. On June 16, 1997, St. Paul Federal Bank for Savings loaned Mr. Scully $92,400.00 in exchange for a mortgage that enabled Mr. Scully to purchase a house at 924 Elgin Avenue in Forest Park, Illinois (the "Property") (doc. # 1: Compl., at ¶¶ 4-6). Years later, on November 18, 2013, Mr. Scully suffered a stroke and remained hospitalized until February 5, 2014 (*Id.*, at ¶ 8).

Mr. Scully made timely payments on his mortgage through an auto-withdrawal system set up at Charter One Bank, N.A., until "some point subsequent to February 2014" (Compl., at ¶ 12). By that time, Charter One (which previously had merged with St. Paul Federal Bank for Savings) had merged with Citizens (*Id.*, at ¶ 5), and the auto-withdrawal system ceased making payments on Mr. Scully's mortgage, resulting in a default (*Id.*, at ¶¶ 12-13).

On December 31, 2014, the mortgage was placed into foreclosure, and a foreclosure complaint was filed on behalf of Citizens in the Circuit Court of Cook County (Compl., at ¶ 15). Mr. Scully was "purportedly" served with the foreclosure complaint on January 7, 2015, but he cannot recall being served "because of his disabilities" (*Id.*, at ¶¶ 16-17). That said, no challenge to service was made in the state court foreclosure action.

Mr. Scully's financial advisor, Mr. Jaeger, learned of the foreclosure action in March 2015 (Compl., at ¶ 18). Neither the complaint nor Mr. Jaeger's affidavit (doc. # 28: Pl.'s Resp., Ex. A) discloses how Mr. Jaeger learned of the action. At that time, Mr. Jaeger informed Citizens' attorney that Mr. Scully was willing and able to pay all amounts due under the mortgage (*Id.*, at ¶ 19). According to Mr. Jaeger, Citizens' counsel informed him that he could not discuss any amounts due with Mr. Jaeger since he was not Mr. Scully's attorney, but that Mr. Scully "still had at least a few months to resolve the matter and pay off the Mortgage" (Jaeger Aff., at ¶¶ 15-16).

On March 13, 2015, Citizens filed three motions in the Circuit Court of Cook County: a motion for default, a motion for entry of judgment of foreclosure, and a motion to set the redemption period to six months after Mr. Scully was served with summons or three months after entry of judgment, whichever date was later, pursuant to 735 ILCS 5/15-1603(b)(2) (Compl., at ¶¶ 21-22).[2] Mr. Jaeger states that Citizens' attorney did not tell him that these motions had been filed (Jaegar Aff., at ¶¶ 16-18). However, Mr. Jaeger did not disclose the date of his telephone

---

[2]Section 15-1603(b)(2) states that the redemption period in non-residential foreclosures ends six months from the date the mortgagor was served with summons or otherwise submitted to the jurisdiction of the court, or three months from the date of entry of a judgment of foreclosure, whichever is later. 735 ILCS 5/15-1603(b)(2). For residential foreclosures, where the real estate is the primary residence of the mortgagor, the redemption period is seven months from the date of service or three months from the date of entry of the judgment of foreclosure. *Id.* at 5/15-1603(b)(1).

3

conversation with Citizens' attorney, so we do not know if the motions already had been filed by the time they spoke.

On April 2, 2015, the state court granted Citizens' motions and entered a judgment of foreclosure (Compl., at ¶ 24; *Id.*, Ex. C: Judgment of Foreclosure and Sale, at ¶ 10(d)). Citizens' attorney also presented the state court judge with an "Order Shortening Redemption Period" which the judge signed, stating that under 735 ILCS 5/15-1603(b)(4),[3] the redemption period would expire 30 days from the date the judgment of foreclosure was entered, or May 2, 2015 (*Id.*, at ¶¶ 25, 27; *Id.*, Ex. B: Order Shortening Redemption Period).

By May 2, 2015, Mr. Scully had not retained an attorney to appear in the foreclosure action, had not appeared *pro se*, and had not paid the amounts due. According to Mr. Jaeger, he first assisted Mr. Scully in obtaining counsel in or about late June 2015 (Jaeger Aff., at ¶ 19), some three months after Mr. Jaeger's conversation with Citizens' counsel. Mr. Scully did not retain counsel until July 3, 2015 (Compl., at ¶ 31).

By that time, the May 2, 2015 deadline to redeem the Property had passed. On May 19, 2015, the Property was sold at a foreclosure sale for $130,000.00 to a *bona fide* third party purchaser, Corona Investments, LLC ("Corona") (Compl., at ¶ 28). On June 17, 2015, the state court confirmed the sale of the property (*Id.*, at ¶ 30; *Id.*, Ex. E: Order Approving Sale and Distribution, Confirming Sale and Order of Possession).

Shortly after he was retained on July 3, 2015, Mr. Scully's counsel sent an email to Citizens' attorney stating that the redemption date should have been July 7, 2015, not May 2, 2015, and that Mr. Scully wanted to redeem the entire balance of the mortgage, including interest and fees, before July 7, 2015 (Compl., at ¶ 31). When Citizens' counsel failed to respond, on

---

[3] Section 15-1603(b)(4) states that the redemption period shall end 30 days after the date the judgment of foreclosure is entered if the court finds that the mortgaged real estate has been abandoned. 735 ILCS 5/15-1603(b)(4).

4

July 6, 2015, Mr. Scully's counsel filed a Combined Emergency Motion to Reconsider and Motion to Vacate the Judgment of Foreclosure, Order Shortening Redemption Period, and Order Approving Sale, which he presented to the trial court on July 7, 2015 (*Id.*, at ¶¶ 32-34).

In the Combined Emergency Motion, plaintiff argued that Citizens' counsel improperly decreased the statutory redemption period in violation of the Illinois Mortgage Foreclosure Law ("IMFL"), because the 30-day redemption period only applies to abandoned property, but the Property was not abandoned, as Mr. Scully or his tenants were residing there (doc. # 18: Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. 1: Scully's Emergency Mot., at ¶¶ 36-40). Mr. Scully argued that even if the Property was not his primary residence and thus not residential real estate, the presence of tenants at the Property would entitle him to a redemption period lasting six months after he was served with summons or three months after entry of judgment, whichever date was later (Compl., at ¶ 22; *Id.*, Ex. A: Mot. to Set Redemption Period, at ¶¶ 1-4). Mr. Scully asserted that he had been deprived of the full redemption period provided by law, and he thus asked the state court to "reconsider the error of law placed upon it by plaintiff, and that the Orders be corrected to reflect the proper law, and to permit defendant to exercise his right of redemption within a proper period of time" (*Id.*, at ¶ 44).

Citizens' attorney and Corona's principal objected to Mr. Scully's emergency motion, and the state court gave them an opportunity to respond in writing (Compl., at ¶¶ 34-35). In its response, filed on July 27, 2015, Citizens argued that Mr. Scully's request for relief from the judgment of foreclosure and judicial sale came too late because: (1) 735 ILCS 5/15-1509(c) barred Mr. Scully from relief once the court confirmed the sale of the property and delivered the judicial deed to the successful bidder; (2) 735 ILCS 5/15-1605 prohibits the trial court from extending the redemption period after a judgment of foreclosure has been entered and a judicial

5

sale held; (3) Mr. Scully failed to exercise his right of redemption even within the six month time-frame because the IMFL requires written notification of intent to redeem within 15 days before the redemption period ends, which Mr. Scully failed to provide;[4] and (4) Mr. Scully was precluded from challenging the foreclosure sale because he had failed to respond to Citizens' initial foreclosure complaint and raise defenses to the foreclosure and sale in the original action (Def.'s Mem., Ex. 2: Citizens' Resp. to Scully's Emergency Motion at 1-10).

On August 27, 2015, the date the state court was set to hear Mr. Scully's emergency motion, his attorney withdrew the motion (Compl., at ¶ 35; Def.'s Mem., Ex. 3: 8/27/15 Order). Mr. Scully asserts that he withdrew the motion because "it became impossible to challenge the confirmation of the improper redemption date for the Forest Park Property, even though the trial court still had jurisdiction over the matter, because Citizens refused to correct its error with the redemption date, and because Corona was a *bona fide* purchaser for value" (Compl., at ¶ 38). Mr. Scully then negotiated with Corona, which agreed to sell the Property back to Mr. Scully for $190,000.00 (*Id.*, at ¶ 40).

Thereafter, on October 29, 2015, Mr. Scully filed his complaint in this case, alleging a single-count claim that Citizens' conduct violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 (Compl. at ¶¶ 42-51). Specifically, Mr. Scully cites Citizens' conduct in obtaining a deadline for redeeming the Property of May 2, 2015, rather than July 7, 2015. Plaintiff claims that in so doing, Citizens engaged in an unethical, "unfair practice" that offends public policy because Citizens knew or should have known that the order shortening the redemption period violated Illinois law, but refused to correct the alleged violation (*Id.*, at ¶¶ 43-

---

[4]We note that while Mr. Jaeger says he informed Citizens' counsel in March 2015 of Mr. Scully's intent to redeem, that notification was not in writing. And, while the email by Mr. Scully's attorney gave written notice of an intent to redeem, that notice came only four days before the July 7, 2015 deadline that plaintiff says should have applied.

6

45). Mr. Scully claims that he suffered damages in excess of $1,000,000.00 as a proximate result of Citizens' unfair practices, including more than $67,000 he spent to purchase the Property back from Corona and substantial emotional and psychological harm (*Id.*, at ¶¶ 48-50). Mr. Scully also seeks punitive damages on the ground that Citizens "acted with utter indifference to Scully's ownership of the Forest Park Property, to wit, its refusal to correct the redemption date error while the trial court still possessed jurisdiction over the mortgage foreclosure case" (*Id.*, at ¶ 51).

### III.

Defendant argues that plaintiff's suit should be dismissed for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine. Alternatively, defendant argues that even if this Court could exercise subject matter jurisdiction over plaintiff's complaint, the principle of *res judicata* prevents this Court from addressing Mr. Scully's claims. For the reasons discussed below, we find that we do not have subject matter jurisdiction over Mr. Scully's complaint, and we thus do not reach the *res judicata* argument. *See Bryan v. Belvidere Nat. Bank*, 122 F. App'x 858, 859 (7th Cir. 2005) (internal quotations and citations omitted).

### IV.

"The *Rooker-Feldman* doctrine derives from two Supreme Court cases in which plaintiffs 'litigated and lost in state court ... [then] essentially invited federal courts of first instance to review and reverse [the] unfavorable state court judgments.'" *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 704-05 (7th Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Inds. Corp.*, 544 U.S. 280, 283 (2005), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983)). "Because Congress empowered only the Supreme Court to exercise appellate authority to reverse and modify state court judgments, . . . such suits were . . . properly dismissed for want of subject-matter jurisdiction." *Arnold*, 752 F.3d at 705 (internal

citations and quotations omitted). The *Rooker-Feldman* doctrine "is narrowly confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Arnold*, 752 F.3d at 705 (quoting *Exxon Mobil*, 544 U.S. at 284).

The doctrine applies not only to claims that were actually raised before the state court, but also to claims brought in federal court that are "inextricably intertwined" with state court determinations. *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 533-34 (7th Cir. 2004), as amended on denial of reh'g and reh'g *en banc* (Aug. 3, 2004). If the alleged injury was caused by or was inextricably intertwined with the state court judgment, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999); *see also Carpenter v. PNC Bank, Nat'l Ass'n*, No. 15-2732, 2016 WL 412839, at *2 (7th Cir. Feb. 3, 2016) ("under the *Rooker-Feldman* doctrine a federal district court is powerless to remedy alleged mistakes in a state court judgment"). If we determine that a plaintiff's federal court claim is inextricably intertwined with a state court judgment, "we must then determine whether the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings." *Taylor*, 374 F.3d at 533. If we find both that plaintiff's claims are inextricably intertwined with the state court determination and that he had a reasonable opportunity to raise the issue in the state court proceedings, then we do not have subject matter jurisdiction over the plaintiff's claims. We consider each of these elements in turn.

### A.

The determination of whether federal court claims are inextricably intertwined with the state court judgment "hinges on whether the federal claim alleges that the injury was caused by

the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Taylor*, 374 F.3d at 533. In his response to Citizens' motion to dismiss, Mr. Scully does not dispute that the injury he asserts in his federal court claim was caused by the state court judgment of foreclosure and approval of the sale of the Property. Indeed, this would have been a losing argument had Mr. Scully asserted it, because his federal court complaint alleges that it was the state court judgments of foreclosure and sale after he failed to redeem the Property during the shortened redemption period that injured him -- not any independent prior act. Mr. Scully seeks damages for the money he expended to purchase the Property back from Corona and for the emotional and psychological damages he claims he suffered because his house was foreclosed upon and sold (Compl., at ¶¶ 48-50).

The Seventh Circuit has consistently affirmed district court decisions dismissing complaints under the *Rooker-Feldman* doctrine where the complaints, such as Mr. Scully's, were inextricably intertwined with the state court judgments of foreclosure and/or sale. In *Riddle v. Deutsche Bank Nat'l Trust Co.*, 599 F. App'x 598, 600 (7th Cir. 2015), for example, the plaintiff claimed in his federal court complaint that he was injured when the defendant lenders deprived him of due process and violated state law by foreclosing on his house despite knowing that service of process was defective. The Seventh Circuit held that despite alleging defective service, these claims were in substance "an attack" on the state court judgment -- and thus barred by the *Rooker-Feldman* doctrine -- because "it was the state-court judgment that authorized the foreclosure and subsequent sale of [the plaintiff's] house." *Id.* Similarly, in this case, even if the shortened redemption period was erroneous, Mr. Scully's claims are still an attack on the state court judgments authorizing foreclosure and sale of his house, which is the kind of attack barred under *Rooker-Feldman. See also Calhoun v. CitiMortgage, Inc.*, 580 F. App'x 484, 486 (7th Cir.

2014) (holding that district court properly dismissed case based on *Rooker-Feldman*: by arguing that the judicial sale of his home was improper because the lender-defendant did not comply with the Home Affordable Modification Program (HAMP), the plaintiff "effectively assert[ed] that the state foreclosure judgment caused his injury"); *Taylor*, 374 F.3d at 533-34 (holding that the plaintiff's federal court complaint seeking compensatory money damages in the amount of the value of her home plus interest and punitive damages "demonstrates that her asserted injury is the loss of her home due to the Defendants' conspiracy to deprive her of her home, not an independent injury arising from acts of the Defendants"). Plaintiff cannot escape this result by asserting (Pl.'s Resp. at 7-9) that Citizens engaged in affirmative misconduct that misled the state court into improperly shortening the redemption period. *Nora v. Residential Funding Co., LLC*, 543 F. App'x 601, 602 (7th Cir. 2013) ("a request for review of a state-court foreclosure decision that includes a claim for damages based on charges of defrauding the state court does not elude *Rooker-Feldman*").

**B.**

Since Mr. Scully's federal court claim is inextricably intertwined with the state court judgment, we must now determine whether he had a "reasonable opportunity to raise the issue in state court proceedings." *Taylor*, 374 F.3d at 533. Mr. Scully argues that the *Rooker-Feldman* doctrine does not apply to his federal court complaint because he did not have a reasonable opportunity to raise the issues in the state court foreclosure action due to: (1) defendant's and defense counsel's actions; and (2) state court law and procedures (Pl.'s Resp. at 5-6). As we explain below, neither of these arguments passes muster.

1.

Mr. Scully argues that defendant's conduct deprived him of a reasonable opportunity to raise the issues in his federal court complaint in state court because (1) Citizens' foreclosure counsel, through out of court misrepresentations and the failure to disclose information to Mr. Jaeger, lulled him into a false sense of security concerning the timing of the foreclosure on his home, and (2) Citizens' foreclosure counsel misled the state court judge into unlawfully shortening the foreclosure redemption period (Pl.'s Resp. at 5-9; *see also* Jaegar Aff., at ¶¶ 14-18). However, these arguments run headlong into Seventh Circuit authority holding that a plaintiff cannot prove that he lacked a reasonable opportunity to raise the issues in his federal court complaint in state court based on the defendant's actions. "To establish that they did not have a reasonable opportunity to raise an issue in state court, federal litigants must 'point[] to some factor *independent of the actions of the opposing party* that precluded the litigants from raising their federal claims during the state court proceedings.'" *Taylor*, 374 F.3d at 533 (quoting *Long*, 182 F.3d at 558) (emphasis added). "It is not enough for [the plaintiff] to say that . . . she was kept away from the Circuit Court . . . proceeding by the defendants' chicanery." *Long*, 182 F.3d at 558. Mr. Scully's argument that defendant misled him and the state court has no bearing on whether he had a reasonable opportunity to challenge the length of the redemption period in the state court proceeding.

2.

Plaintiff also argues that state court procedures prevented him from raising any challenge to the redemption period in state court. Plaintiff alleges three ways in which Illinois law prevented him from raising his claims in state court: (1) a state court cannot extend a redemption period once that period has expired, a judgment of foreclosure has been entered and a judicial

11

sale has been confirmed, even if the redemption period was miscalculated; (2) Citizens was the only party that could correct the redemption date error, but Citizens refused to do so; and (3) it was procedurally impossible for Mr. Scully to file a counterclaim against Citizens in the foreclosure action because the shortened redemption period resulted in final judgment on June 17, 2015, before Mr. Scully discovered that the redemption period had been shortened (Pl.'s Resp. at 10-12). Thus, plaintiff contends, he faced "insurmountable legal barrier[s] in state court," and his only remedy was a "separate and subsequent lawsuit" in federal court (*Id.*).

We disagree. To show that he lacked a reasonable opportunity to challenge the redemption period in the state court proceeding, a plaintiff must point to "'either some action taken by the state court or state court procedures in place [that] have formed the barriers that the litigants are incapable of overcoming in order to present certain claims to the state court.'" *Taylor*, 374 F.3d at 533 (quoting *Long*, 182 F.3d at 558). It is not sufficient for a plaintiff to point to barriers that arose of his own making. With these principles in mind, we consider plaintiff's arguments that state law or state court procedures deprived him of a reasonable opportunity to challenge the shortened redemption period.

Section 1605 of the IMFL does prohibit any right of redemption "under or with respect to a mortgage after a judicial sale of the mortgaged real estate . . . or after entry of a judgment of foreclosure . . . ." 735 ILCS 5/15-1605. As plaintiff points out, the Illinois Appellate Court has applied this section to affirm a trial judge's denial of a motion to vacate a court order approving the foreclosure and sale of a home even where the court may have erred in setting a too-early redemption period (Pl.'s Resp. at 10, citing *Margaretten & Co. v. Martinez*, 550 N.E.2d 8, 10 (Ill. App. 1990)).

However, plaintiff ignores that in *Martinez*, the Illinois court held that under 735 ILCS 5/2-1401, mortgagors may seek to vacate a state court's order approving the sale of foreclosed property if they establish: "(1) existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the trial court in the original action; and (3) due diligence in filing the section 2-1401 petition." *Martinez*, 550 N.E.2d at 11. In *Martinez*, the appellate court held that the trial judge properly denied the mortgagors' motion to vacate because, although they alleged that the trial court erred in setting a too-early redemption period, the mortgagors had not shown "due diligence on their part in presenting their claim to the trial court in the original action." *Id.*

In this case, Mr. Scully says he does not recall being served with the foreclosure complaint. But, he admits that his advisor, Mr. Jaeger, knew of the complaint by March 2015, well before the expiration of the redemption period on May 2, 2015. Plaintiff says that in the March 2015 conversation, Citizens assured Mr. Jaeger that Mr. Scully had at least a few months to act, but concedes that Mr. Scully did not retain counsel or initiate contact with Citizens until July 3, 2015, more than three months later -- after the May 2 expiration of the redemption period, after the May 19 foreclosure sale, and after confirmation of that sale on June 17, 2015.

Perhaps plaintiff's arguments about why he did not act sooner could have carried the day in the foreclosure action. However, we will never know the answer to that question, because Mr. Scully withdrew the Section 2-1401 petition he had filed in state court prior to the judge issuing his ruling (doc. # 29: Def.'s Reply at 4-5). Mr. Scully claims that he withdrew his motion because he believed defendant had the winning argument against his motion to vacate (Pl.'s Resp. at 5). However, that does not change the fact that the state court gave Mr. Scully a reasonable opportunity to raise his arguments, even late in the game as part of his motion to

vacate. At that point, contrary to Mr. Scully's argument now, Citizens was not the only party who could provide relief from the alleged redemption date error. It was Mr. Scully who deprived the state court of an opportunity to consider the arguments he now raises. If he withdrew the motion because he decided he could not meet the *Martinez* standards of showing due diligence and a meritorious claim, that surely provides no sound basis to avoid application of the *Rooker-Feldman* doctrine.[5]

Plaintiff contends that this case is "factually and legally" similar to *Long* (Pl.'s Resp. at 6). We disagree. In *Long*, the Seventh Circuit held that *Rooker-Feldman* was inapplicable to the claims for money damages under the FDCPA and Section 1983 contained in the plaintiff's federal court complaint because the plaintiff was "effectively precluded" from raising her federal claims in the eviction proceedings in state court. *Long*, 182 F.3d at 559. The critical issue in *Long* was the nature of the state court proceeding. The defendants had sought to evict the plaintiff by instituting a forcible entry and detainer action against her, a proceeding which may "not be burdened by other matters unrelated to the issue of possession." *Id.* (internal citations and quotations omitted). Thus, claims that were not "germane" to the issue of possession could not be pursued in the state court proceeding. *Id.* The Seventh Circuit determined that the plaintiff's claims for damages under the FDCPA and Section 1983 would not have been considered germane to the forcible entry and detainer action and therefore could not have been presented before the Circuit Court. *Id.* at 559-60. By contrast, the state court foreclosure proceeding in this case was not a summary forcible entry and detainer case, and Mr. Scully could have raised in state court any challenge to the length of the redemption period -- the challenge that is the centerpiece of this lawsuit. The fact that he withdrew his state court challenge -- whether out of

---

[5]For the same reasons, it was not "procedurally impossible" for plaintiff to file a counterclaim against Citizens before the proceedings in the foreclosure action and the sale of the Property were completed.

14

fear the state court judge would find the lack of a meritorious defense or lack of diligence, or for some other reason -- does not give him license to now raise that challenge in federal court.

## CONCLUSION

Because Mr. Scully's claims are inextricably intertwined with the state court's judgment of foreclosure and he has not demonstrated that barriers prevented the state court from considering his claims, the *Rooker–Feldman* doctrine deprives this Court of subject matter jurisdiction over his suit. We therefore grant defendant's motion to dismiss and dismiss plaintiff's lawsuit for lack of subject matter jurisdiction under *Rooker-Feldman* (doc. # 17).

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: April 19, 2016**